STATE OF MISSOURI, RESPONDENT, v. SAM M. PEMBERTON, APPELLANT.—
151 S. W. (2d) 111.

Kansas City Court of Appeals.    April 7, 1941.

*Edwin C. Orr* for respondent.

*Don C. Carter* for appellant.

SHAIN, P. J.—In this proceeding Article 13, Revised Statutes of Missouri, 1939, is involved. The subject-matter of aforesaid article is "Dogs."

In Section 14555 of the article, the term "dog" is defined as follows:

"Sec. 1455. Word 'dog' defined. The word 'dog' whenever used in this article without qualifications, is intended to mean a female as well as a male dog over six months of age. (R. S. 1929, sec. 12878)."

In our judicial consideration we must adhere to the legislative definition. Missourians, by reason of sentimental folk poetry and song, generally attribute to the term "dog" the appellation "hound."

Regardless of the fact that, by legislative mandate, Missouri courts are out of politics, we hope that the legislative definition in Article 13 will not be construed to take out all of the sentiment associated with the term. The term "dog" to a Missourian brings the thought of faith and devotion and brings visions of the deceased master's dog pathetically guarding his master's grave. However, the cold statute confronts us and a dog is a dog, whether hound, Collie or just dog, if it has attained the age of six months and, as to all canines under that age the appellation of "pup," a term variously applied, must suffice. In the case at bar we are further removed from sentiment by reason of the fact that the term "dog" in the article is associated with the term "tax" and no such association arises in poetry or song and is foreign to the association generally found in orations and in judicial opinion. Our preliminary remarks are called forth for the reason that the issue herein presents a question of first impression which involves the question as to whether or not a dog be or not be a dog in legal contemplation of the question as to whether the defendant in the information filed has been legally informed of the offense with which he is charged.

The defendant, the appellant herein, in his brief states as follows:

"On August 23rd, 1939, in vacation before the October Term, 1939, of the Circuit Court of Boone County, Missouri, the prosecuting attorney of Boone County, Missouri, filed an information in the office of the clerk of said court, charging the defendant, Sam M. Pemberton, with the offense of suffering and permitting a dog to remain upon his farm, in Boone County, Missouri, without having caused said dog to be listed and the tax paid on it."

The defendant was arrested and plead not guilty and duly gave bond. Thereafter, defendant duly appeared at the regular October Term, 1939, of the Boone County Circuit Court. Thereafter, and at said term, the prosecuting attorney, by leave of court, filed an amended information.

The amended information is in words and figures as follows:

"Comes now Edwin C. Orr, Prosecuting Attorney, within and for the County of Boone and State of Missouri, leave of Court first had and obtained and files this his first amended information, and upon his official oath informs the Court that on November 8, 1938, the Dog Tax Law, to-wit, Article 12, Chapter 88, Revised Statutes, Missouri, 1929, as amended by the Legislature of Missouri, Session Acts, 1937, by House Bill No. 140 entitled 'Domestic and other animals; Relating to a tax on Dogs' consisting of Sections 12872 to 12874-c, both inclusive, approved June 24, 1937, was adopted by Boone County, Missouri, at the general election on the eighth day of

November, 1938, and was put in force in said County on November 19, 1938, and was thereafter and at all times mentioned herein in force and was the law in Boone County, Missouri, and was the law and in force in Boone County, Missouri, on and after the seventeenth day of August, 1939; and the said Edwin C. Orr further informs the Court that Sam M. Pemberton on or about the seventeenth day of August, 1939, at and in the County of Boone and State of Missouri, did wilfully and unlawfully suffer and permit one male Collie dog then and there being the property of one Millard Pemberton, to remain upon the farm of the said Sam M. Pemberton under the immediate control of the said Sam M. Pemberton without having caused said dog to be listed and a tax thereon to be paid; contrary to the statutes in such cases made and provided; against the peace and dignity of the State.

"EDWIN C. ORR,
"Prosecuting Attorney.

"Edwin C. Orr, Prosecuting Attorney of Boone County, Missouri, makes oath and says that the facts stated in the above and foregoing information are true according to his best information and belief.

"EDWIN C. ORR,
"Prosecuting Attorney.

"Subscribed and sworn to before me this 22nd day of November, 1939.

"(SEAL)          FLOYD ROBERTS,
"Clerk of Circuit Court."

Trial was before court, the defendant was found guilty, judgment in accordance and defendant duly appealed.

The defendant in assignment of errors specifically charges errors as follows:

"I"

"Because the first amended information filed in this cause by the State, and upon which defendant was tried, does not state any offense against the laws of this State. And said first amended information does not charge any offense under what is commonly called the 'Dog Tax Law,' Article 12, Chapter 88, Revised Statutes of Missouri for 1929, as amended by Acts of the Legislature of Missouri for 1937, page 224, Sections 12872 to 12874-c, inclusive, approved June 24th, 1937."

"II"

"Because the court erred in refusing to give defendant's peremptory instruction to find the defendant not guilty at the close of all the evidence in the case.

"IV"

"Because the 'Dog Tax Law,' Article 12, Chapter 88, R. S. of Missouri for 1929, as amended by Acts of the Legislature of Missouri for 1937, page 224, Sections 12872 to 12874-c, inclusive, approved

June 24th, 1937, was not in force and effect in Boone County, Missouri, at the time of the alleged offense charged against defendant, viz., on August 17th, 1939, nor at any time before or after such date, because such law had not been properly and legally adopted in Boone County, Missouri, nor the proper and essential steps or procedure taken to put such law into force and effect in Boone County, Missouri, in this, to-wit:''

The defendant in his brief states as to his first point as follows:

''We contend that the amended information does not charge an offense under this law, but is fatally defective in another vital matter, viz.: It fails to allege or set out the age of the dog which defendant is charged with harboring, etc., on his farm. This is a vital and essential ingredient of the offense, and a necessary allegation in the information, because the 'Dog Tax Law' applies solely to 'dogs over the age of six months.' Therefore, to charge the defendant with an offense under this law, the age of the dog must be alleged and set out in the information.''

The information upon which defendant was tried is based squarely upon Section 14557 of Revised Statutes 1939, and follows closely the language of the statute.

Article 13 of Chapter 103, Revised Statutes 1939, deals with many phases of the dog question and the article contains one section, to-wit, 14555, set forth, *supra*, which clearly defines the meaning of the term as applying to every phase declared upon in the article.

It is Horn Book law that where an exception or provision appears in a separate and distinct class from that defining and creating the offense, the exception becomes a matter of defense. [State v. Brown, 306 Mo. 532.]

Otherwise expressed; if the dog that defendant had was not a dog, duty devolves upon defendant to inform the court that his dog is a pup.

We rule against defendant on his point one.

In logical sequence, we next give consideration to defendant's contention designated in his brief as IV.

The above question arises from the fact that the provision for taxation of dogs has a local option provision as follows:

''Provided, that upon the filing of petition signed by one hundred or more householders of any county and presented to the county court at any regular or special session thereof more than thirty days before any general election to be had and held in said county, it shall be the duty of the county court to order the question, as to whether or not there should be adopted the law, creating a license tax on dogs, submitted to the qualified voter, to be voted upon at the next election. Upon the receiving of such petition it shall be the duty of the county court to make an order as herein recited, and the

county clerk shall see that there is printed upon all ballots to be voted at the next election the following:

"For creating a license tax on dogs—

"Yes          No ·

"(Erase the words you do not wish to vote)

"The returns of said election upon said subject shall be opened, canvassed and certified, as the returns for general elections. If the majority of the votes cast upon the subject be in favor of license tax on dogs, the county court shall spread the result of such election upon its records and give notice thereof by publication in some newspaper printed and published in such county and such law shall become operative from the time such publication is made."

It has always been the policy of the courts of this State to not set aside and hold for naught a local option election for mere non-essential irregularities.

If the records of a county conclusively show that such court had jurisdiction to proceed to call a local option election and such an election is duly called and had, mere irregularity in record showing of procedure and findings of the court, will not void the election unless such showing within itself negatives the jurisdiction to act. [Bine v. Jackson County, 266 Mo. App. 228.]

In State ex rel. v. County Court of Howard County, 90 Mo. 594, the Supreme Court of Missouri was confronted with three questions, to-wit:

"The questions presented by the record before us involve a construction of the above act and are as follows: (1) Is it incumbent on the county court, in determining whether a petition presented for dramshop license in a town, or. city, is signed by a majority of the assessed tax-paying citizens, to count married or single women who reside in the city or town, and own property in their own right, and who are assessed thereon by the regular assessors of the city at the last assessment? (2) Are minors, residents in said city, who have guardians and who own property, and are regularly assessed, to be counted? (3) Are citizens, residing outside of the city and who own property in said city, and are regularly assessed, to be counted?"

The court laid the rule of construction to be followed as follows:

"The solution of these questions depends upon the meaning to be given to the word 'citizens,' and is ascertaining that, the usual canons of construction with reference to the construction of statutes must be applied. One of these rules is that statutes are to be read according to the natural and obvious import of the words without resorting to subtle, or forced constructions for the purpose of either limiting or extending their operation. 'The fundamental reason for this rule . . . is to be found in the consideration, that, unless courts as a general thing construe language in the same sense in which it is used

by the Legislature, that is, according to the ordinary and natural import, it would be in vain to attempt to preserve any harmony between these two great coordinate departments of government, and the contrary doctrine would open the door to intolerable looseness of construction.' [Sedg. on Stat. Law, 220.]''

After discussion, the conclusion reached is stated thus:

"Accepting the definition put upon the word citizen by the highest authority, we must return an affirmative answer to the first two questions propounded by the record.''

We conclude that the above rule furnishes a guide for the solution of the question herein presented.

The act of the county court in calling a local option election is judicial in character and the act of declaring the result of such an election partakes of the nature of a judgment.

Our foregoing remarks prelude the announcement of a fundamental principal involved herein. The petition upon which any court acts must contain the necessary allegations that give to the court the power to act.

The county court is an inferior court of limited jurisdiction and its jurisdiction to call a local option election must affirmatively appear by some part of its record of proceedings or its act is a nullity. [State ex rel. v. Forest, 177 Mo. App. 245.]

Necessary to the jurisdiction of a county court to call an election to adopt the Dog Tax Law, not less than one hundred householders of the county must petition for the election within a stated period of time before the general election.

The word "householder" must be given its legal interpretation and effect. In other words, what is the natural and obvious import of the word or what did the Legislature intend by the qualification expressed by the word?

The natural and obvious import of the word "householder" is that of head of the family. Words and Phrases, Second Series, Vol. 2, p. 919, says of the word "household" that "It embraces a household composed of parents, children, or domestics; in short, every collective body of persons living together within one curtilage subsisting in common and directing their attention to a common object. [Robbins v. Bangor Ry. & Electric Co., 62 Atl. 136, 141, 100 Me. 496, 1 L. R. A. (N. S.) 963 (citing 3 Words and Phrases, p. 2673), and cases cited.]''

The common and generally accepted meaning of the term "householder" embraces the idea of anyone, man or woman, who maintains a home in the community. It follows that there may be a number of voters in a home and only one householder.

The petition upon which the county court proceeded to act in this matter is as follows:

"The menace to human life caused by rabies in dogs and cats and severe losses to livestock and poultry owners prompts the solicitation of the Boone County Court to put on the next general election ballot the question of enacting a Dog Law in Boone County in keeping with the law as revised at the last session of the Missouri Legislature. Namely, that dogs and spayed bitches be taxed at the rate of $1.00 per head, $3.00 for bitches, and $10.00 for kennels."

Eight petitions, duplicate of above, appear to be signed in total by more than 100 names.

It nowhere appears in any of the petitions circulated, as to whether petitioners are householders, or even whether citizens and voters of Boone County, Missouri.

Accompanying the petitions sent to the county court was a letter as follows:

"Honorable County Court of Boone

"Court House

"Columbia, Mo.

"I herewith attach a petition asking that the Boone County Court have placed on the ballot at the next General Election the question of enacting a dog law in Boone County. I believe the last Legislature authorized the County Court to take such action when a petition signed by 100 householders in the County was presented to the County Court. We have a few over 100 signers. We could easily get many more if it is considered desirable, but unless we are so notified by the County Court we will consider that this petition is satisfactory.

"Very truly yours,

"Wendell Holman

"Wendell Holman

"County Extension Agent"

A record of the county court as follows appears in the Bill of Exceptions, to-wit:

"Pursuant to an election held in Boone County, Missouri, on November 8, 1938, at which time there was submitted a proposition testing the sense of the qualified voters of said county as to whether or not a tax should be imposed on all dogs in Boone County:

"The Court finds that the results of said election, as shown by the returns from the several polling precincts, canvassed and certified to as provided by law, were as follows:

"For a tax on Dogs ..................................2,275

"Against a tax on Dogs ..............................1,624

"It is therefore the order of the Court that there be, and there is hereby a tax levied on all dogs in Boone County, as provided by Section 12873, Laws of Missouri, 1937, to-wit:

"Male dogs and spayed female dogs, $1.00 per year; all other dogs, $3.00 per year; licensed kennels of 10 dogs or more, $10.00 per year."

There appears in the Bill of Exceptions a notice of publication which appears to be in due form as follows:

"NOTICE TO DOG OWNERS"

"Pursuant to an election held in Boone County, Missouri, on November 8, 1938, at which time there was submitted a proposition testing the sense of the qualified voters of said county as to whether or not a tax should be imposed on all dogs in Boone County:

"The Court finds that the results of said election, as shown by the returns from the several polling precincts, canvassed and certified to as provided by law, were as follows:

"For a tax on Dogs .................................2,275
"Against a tax on Dogs ..............................1,624

"It is therefore the order of the court that there be, and there is hereby a tax levied on all dogs in Boone County, as provided by Section 12873; Laws of Missouri, 1937, to-wit:

"Male dogs and spayed female dogs, $1.00 per year; all other dogs, $3.00 per year; licensed kennels of 10 dogs or more, $10.00 per year.

"Done by order of the County Court, this 17th day of November, 1938.

"W. P. Cunningham,
"Presiding Judge.

"Attest:
"R. M. Morris, County Clerk.
"Insertions, 18-19-c."

Tabulation of votes by districts is shown as totaling "yes" 2,275 and "no" 1,624.

In reviewing this case it must be kept in mind that the question involved is as to a conviction of defendant on a charge of misdemeanor. The question of the guilt or innocence of defendant was the issue in the circuit court.

There are several phases that are called up for review. We have already passed upon the sufficiency of the information. There are left other phases as follows: Does the evidence disclose that any such law exists in Boone County, Missouri, as the one upon which the information is based and if so, does it present an issue of fact as to guilt or innocence of defendant. In other words, we only have before us the question of guilt or innocence, and our consideration of the existence of dog tax law in Boone County, Missouri, is directed at the above proposition alone.

To the issue involved, we must apply the rule of presumption of innocence, and the rule that proof of guilt must be beyond reasonable doubt.

The burden is on the prosecution to show that a valid Dog Tax Law has been adopted in Boone County, Missouri.

We have carefully examined the Transcript and Bill of Exceptions certified to and filed herein, and no record of the first proceeding where the court made its order calling the elections is shown. The record does disclose the entry of the county court certifying that pursuant to an election there was a majority vote cast for the law and an order of court declaring that "there be and there is hereby a tax levied on all dogs in Boone County, as provided by Section 12873, Laws of Missouri, 1937." The record further shows that due publication of same was made. There is also shown a letter from the County Extension Agent wherein the writer expresses his opinion as follows: "I believe that last Legislature authorized the county court to take such action when a petition signed by 100 householders in the county was presented to the county court." With the exception of the above expressed opinion by the agent and reference in the evidence that in two newspaper clippings attached to an exhibit, the word "householder" is not shown to have appeared.

We presume that the petitions offered in evidence were filed with the court and we presume, from what is shown in the record, that there must have been some order made by the county court calling an election and that same was based upon these petitions. However, as the petitions make no disclosure as to whether those signing were householders or even citizens or voters, we must conclude that it fails to show any such fact as conferred any jurisdiction on the County Court of Boone County, Missouri, to call an election. It follows that, insofar as the record before us shows, the county court never acquired jurisdiction to act in the matters and there is nothing in the record from which any court can base a finding of the *required fact that any valid* Dog Tax Law exists in Boone County, Missouri. Without such a finding, no conviction of defendant can be possible. We need not comment further.

Judgment reversed. *Bland, J.,* concurs; *Cave, J.,* not sitting.

## ON MOTION FOR REHEARING.

SHAIN, P. J.—The respondent herein has filed motion for rehearing and asserts two grounds. The first ground is as follows: "*The decision of this court in this case in which it says (page 11 of the opinion)*:

"'We have carefully examined the Transcript and Bill of Exceptions certified to and filed herein, and no record of the first proceeding where the court made its order calling the election is shown,'

"*And on the last page where the court says*:

"'. . . so far as the record before us shows, the county court never acquired jurisdiction to act in the matter, . . .,'

"*overlooks the fact that such an order calling the election based*

*upon the petitions filed, was made, and the county court of Boone County took jurisdiction and did order the election held. That order appears in the County Court Record, Book 21 at page 51, and that the order itself appears on page 9 of the Bill of Exceptions filed in this court with this case, and is in words and figures as follows, to-wit:*

"'In the matter of the Dog Tax Election: A petition of 100 or more qualified voters of Boone County, Mo., having this the 30th day September, 1938, been presented to the County Court of said County, requesting that an election be held in said county for the purpose of voting for or against the collection of a tax on all dogs in said county, under the provisions of Sec. 12881, R. S. Mo. 1929; it is the order of the Court that such election be called and held on November 8, 1938, the same being the date for holding the general election; and that the clerk hereof have said proposition printed on all ballots to be voted at said general election, as provided in said Section 12881.'

*The Court's opinion in this case is quite obviously written on the theory that no such order was made and that the county court did not take jurisdiction and call the election. The court in overlooking this order missed the heart of the case.*

This court in its opinion goes off on the proposition that there is no showing in the record that the petition was signed by one hundred householders, and the court makes the statement (page 11 of the opinion):'' (Italics theirs.)

Our review in this case is made from a somewhat voluminous typewritten record under two separate covers attached together. The first of these documents is entitled "Transcript in Appeal" with no index. The second document is entitled "Bill of Exceptions" with an index in which there are listed only two exhibits: "A, Aff. of Publication" and "Exhibit B, Petitions."

After having resolved the question of sufficiency of pleading in favor of the State and having concluded that if a valid dog law was in force, there was evidence to support the charge, we directed our review to the question of the law and with such issue in mind, we searched the record for documentary evidence upon which rested the solution as to whether or not the local option dog law had been duly adopted in the county.

In addition to the documents indexed Exhibits "A" and "B," we found "Notice to Dog Owners" and a blank dog tax receipt. However, there nowhere appears in evidence the documentary exhibit of first proceeding by the court.

In the motion for rehearing, we are informed where the proceedings, *supra,* appear, as follows:

"MR. CARTER: Q. Mr. Morris, I will ask you to turn to the County Court Record Book 21, page 51, with reference to 'In the Matter of the Dog Tax Election,' and read the order of Court that you have there."

Thereafter the witness is shown as "Reading from the book and page designated." We might make excuses for overlooking this testimony, by reason of the informal manner of not offering the record itself, but it is impossible to give a sound reason for so doing. However, by now giving due consideration of the entry as it appears set forth, *supra,* we are enabled to base our conclusion on fact rather than inference.

The petitions in evidence and set forth *verbatim* in our opinion failed to supply the jurisdictional element of "householders." We are more confirmed in our conclusion that there was never a finding by the court as to such jurisdictional fact. The language set forth in respondent's motion, *supra,* supports the conclusion that the court's action was based upon a consideration of voters rather than householders. It follows that "so far as the record before us shows, the county court never acquired jurisdiction to act in the matter."

Respondent's second asserted ground is as follows:

"*The decision of this court in this case in holding, (last page of opinion):*

" ' . . . there is nothing in the record from which any court can base a finding of the required fact that any valid Dog Tax law exists in Boone County, Missouri. Without such a finding, no conviction of defendant can be possible.'

"*is in conflict with the controlling decisions of the Supreme Court of Missouri hereinafter set forth which hold that the State has made a prima facie showing that the local option law has been adopted and is in force when it introduces, first, the record of the county court showing the result of the election as spread upon the record of the county court in compliance with the law, and second, proof that the requisite publication was made.*" (Italics theirs.)

Respondent cites State v. Searcy, 111 Mo. 236, 20 S. W. 186. The above case was certified to the Supreme Court from an opinion by the St. Louis Court of Appeals. The Supreme Court upheld the opinion of the St. Louis Court of Appeals, 46 Mo. App. 421, and refrained from comment on issues for the reason that "The opinions of the court of appeals are so exhaustive and conclusive that we deem it a work of supererogation to add anything to them."

The case of State v. Searcy so clearly states the law that applies to the issue as raised by respondent's second asserted ground that we need but to review as to the point from consideration of the above case alone.

The opinion in the Searcy case holds that the record made by the county court of the result of the election is *prima facie* evidence of the fact that a valid election has been had. The opinion further holds publication is necessary to put the law in effect. However, same must be proved. Following the above, the language of the opinion, l. c. 427, is as follows:

"We further hold that, after the State has thus shown, *prima facie*, that the statute had been adopted and put in force prior to the date of the offense, it is open to the accused to show the contrary by proving that any of the essential steps named by the statute have not been taken, *except as to those matters where the county court is required judicially to determine the existence of a fact, in which its record is conclusive,—as for instance in respect of the question, whether the petition for the election has been signed by the requisite number of qualified voters.*" (Italics ours.)

We hold that the county court is required to judicially determine the existence of the fact that not less than 100 householders had petitioned for an election in order to make its record conclusive. We hold that before the record of result of election is conclusive, it must be shown that the action of the court was based upon a petition duly signed by the prerequisite number of the qualified class to petition.

We might add here that regardless of where the duty lies to show jurisdictional facts, the record before us clearly shows upon its face that action was taken on showing of petitioning voters and not householders. It is upon such showing of record that we base our conclusions.

The court having no jurisdiction to act when it did act, its judgment was void. It follows that evidence produced in the trial to the effect that signers were householders cannot bring life into a void judgment. The most powerful instrument of the law to alter or amend a judgment in a *nunc pro tunc* order. However, such an instrument is powerless to give life to a void judgment.

Motion for rehearing overruled. All concur.