**WALKER REORGANIZED SCHOOL DISTRICT R–4, Respondent,**

v.

**Chester FLINT and Vernon County Board of Education, Appellants,**

and

**Vernon County Reorganized District No. I, Intervenor-Appellant.**

No. 22594.

Kansas City Court of Appeals.

Missouri.

May 6, 1957.

 

W. Don Kennedy, Nevada, for appellants.

Everett E. Teel, Nevada, for respondent.

HUNTER, Justice.

On June 20, 1956, plaintiff, Walker Reorganized School District R–4, filed its petition praying for a judgment declaring that Coal Creek Common School District No. 37 had become a part of plaintiff district by annexation, and that the funds and property of that former common school district are now the property of plaintiff, who is entitled to assume control thereof, and to receive the taxes paid by its residents. The defendants named were Chester Flint, clerk and member of the Board of Directors of the Coal Creek District, and the Vernon County Board of Education.

On July 20, 1956, these defendants filed their answer requesting the court to declare that the purported annexation of the Coal Creek Common School District to plaintiff was void, and that this district since June 28, 1956, had become a part of Vernon County Reorganized District No. 1 which was entitled to all of its property, books and money.

On August 10, 1956, Vernon County Reorganized District No. 1, hereinafter referred to as intervenor, filed its motion praying for the court to permit it to intervene in the cause, and also filed its answer to plaintiff's petition and its intervening petition praying the court to declare the purported annexation elections for the Coal Creek Common School District No. 37 to plaintiff void, and to further declare that this Common School District had been annexed by intervenor which was entitled to all of its property, books and money.

On August 30, 1956, the case came on for trial. The court first considered the pending motion for leave to intervene. What actually occurred then must be gathered from the transcript:

"The Court: In the case of Walker Reorganized School District R–4 vs. Chester Flint and Vernon County Board of Education, Case No. 212995, is the plaintiff ready to proceed?

"Mr. Teel: Yes, Your Honor.

"The Court: Are the defendants ready to proceed?

"Mr. Kennedy: Yes, Your Honor. Your Honor, I filed a motion to intervene on behalf of the Reorganized R–1 District which you have before you there. As I understand it. Mr. Teel has no opposition to that.

"Mr. Teel: No.

"The Court: Motion of Vernon County Reorganized District No. 1 to intervene is sustained; by consent of counsel.

"Mr. Teel: You might let the record show our answer filed.

"The Court: This is by consent is it, gentlemen?

"Mr. Teel: Yes.

"Mr. Kennedy: I am representing both the intervenor and the defendants. On behalf of the original defendants my answer will be an admission of all of the allegations in the intervening petition.

"The Court: The intervenor's petition?

"Mr. Kennedy: Yes.

"The Court: What about the other petition? Frankly, I don't like to try lawsuits when no pleadings are filed. I want to know what the pleadings are.

"Mr. Teel: I didn't have anything to plead to, Your Honor.

"The Court: I don't mind telling you gentlemen that the last time I was over here I got the pleadings, took them home and briefed the case up from the court's standpoint anyhow. Now an intervening petition comes in here and I don't want some answer filed later on which the court hadn't considered while I was here.

"Mr. Teel: I might say this for the court's benefit and for my benefit—of course there was nothing for me to plead to until just now because the intervening petition hadn't been passed on and accepted.

"The Court: Just a moment. You have had me make a written entry here now that the motion to intervene is sustained by consent.

"Mr. Teel: For the information of the court—

"The Court: 'I have written Defendants file answer to intervening petition. Plaintiff files answer to intervening petition.'

"Mr. Teel: My answer will be an admission of paragraph 2, sub-paragraphs 1 and 2.

"The Court: What about paragraph 3?

"Mr. Teel: That will be denied.

"The Court: Let's proceed then and I will make up the record later. I know what is in paragraph 3.

"Mr. Kennedy: We have entered into a stipulation which will eliminate a good deal of proof. I will hand you a copy of it in just a moment but I want to dictate it into the record here."

The admitted sub-paragraphs 1 and 2 of paragraph 2 (of intervenor's petition) are:

"1. For its intervening petition, intervenor says that on April 17, 1956, the Vernon County Board of Education adopted a plan for a reorganized District to include, among other common and town school districts, Vernon County Common School District No. 37; that said plan was presented to

the State Board of Education and by it rejected; and that subsequently and on June 11, 1956, said Vernon County Board of Education adopted said plan (excluding Blue Mound and Harwood districts, which had been included in the plan adopted April 17, 1956, and rejected by the State Board of Education) as its own, and called an election to be held in the proposed reorganized district on June 28, 1956.

"2. At said election, said plan was approved by a majority of the voters voting at said election; the results were duly certified to the secretary of the Vernon County Board of Education, · who in turn certified the results to the State Board of Education; a board of directors of such reorganized district was duly elected; and said reorganized district has acted in all respects as a district."

Counsel then orally stipulated as follows: On April 16, 1956, there existed in Vernon County, Missouri, a common school district known as Coal Creek District No. 37. Walker Reorganized School District R-4 (plaintiff herein) also was then in existence. On April 18, 1956, there were posted notices that there would be a special election held in the common school district on May 3, 1956, to vote on the proposition whether such district should be annexed to plaintiff. This election was held on May 3, 1956, and resulted in twenty votes favoring annexation with eight votes against annexation. On April 20, 1956, with directors Ray Eddy and Chester Flint present an election was ordered by the School Board of the Coal Creek District for May 10, 1956, to vote on the same proposition, and notices thereof were duly posted. At the May 10th, election there were 22 votes favoring annexation and 10 votes opposing annexation. The results of both elections were duly certified to the Board of Directors of Walker Reorganized School District R-4, which accepted such Coal Creek School District.

On April 17, 1956, the Vernon County Board of Education approved a reorganization plan which included the Coal Creek District in a reorganized district to be known as Reorganized School District R-1. Such plan was subsequently submitted to the voters of the proposed reorganized district R-1 on June 28, 1956. It was adopted by them by a majority of 361 to 58. The results of this election were duly certified to the Secretary of the Vernon County Board of Education, who, in turn, certified the results to the State Board of Education.

At that point plaintiff's counsel asked the court to enter a judgment for plaintiff on the pleading and the stipulated facts for the reason that the facts as stipulated admit that an election was held and the results thereof, and there can be no attack on that election and the results thereof other than by another remedy, quo warranto brought in the State's name, that they are not pursuing here. Intervenor's counsel tacitly conceded that as to defendants, Flint and the Vernon County Board of Education, a quo warranto proceedings brought by them in the name of the State was the appropriate remedy, but contended that as to the dispute between plaintiff and Intervenor, both of whom claim the Coal Creek School District, a declaratory judgment action is proper.

Defendant then called as witnesses, Chester Flint and E. Ray Eddy. Flint testified that he was a member of the Board of Directors of the Coal Creek School District. A special board meeting for the purpose of annexation was called for the night of April 20, with all members notified. He and Ray Eddy, President of the Board, were present. They called a special election to be held on May 10, to vote on the proposition of the annexation of the Coal Creek School District No. 37 to plaintiff. No petition requesting the Board to take that action was presented to the two of them that evening; nor did they have such a petition with them at that meeting. In

fact, he had never seen such a petition. He was asked:

"Q. Why was the election called? A. A petition had been presented to Ray Eddy.

"Q. Do you know what date that was presented? A. No, I don't just right now.

"Q. Prior to April 17th wasn't it? A. I don't believe so.

"Q. You are not sure? A. I'm not positive.

"Q. You as a member of that board that night were acting on a petition which hadn't been presented to the board as a whole, is that correct? A. That's right.

"Q. Did Mr. Clevenger or Mr. Smith out in your district come to your house on the 16th of April with a petition? A. Yes.

"Q. You just testified that you didn't—

"Mr. Teel: Would you read his testimony, Mr. Reporter? (whereupon the previous testimony of the witness was read by the reporter.)

"Q. Was Mr. Clevenger or Mr. Smith there with that petition on April 16th, or were they not? A. They were there. They showed it to my dad.

"Q. You didn't see it? A. I didn't see nothing but a white sheet of paper—I don't know whether there was a word on it or not.

\* \* \* \* \* \*

"Q. You still felt that this sheet of paper which you say you just saw and didn't have in your hands—you felt strong enough about it at this board meeting you voted to have a special election under that scrap of paper, didn't you, Mr. Flint? A. Yes, but the duties of the school board is,

if anything like that comes up you must act on it.

"Q. That is what you did, wasn't it? A. Yes.

\* \* \* \* \* \*

"The Court: It is stipulated that an election was ordered, that it was held and that the proposition carried.

"Mr. Kennedy: That's right."

E. Ray Eddy testified that on April 17, Mr. Brown and Mr. Smith did present to him a petition wanting him to call a board meeting and he agreed to if he could get the board members together. This petition asked for the annexation. It had signers on it but he did not count the number of them. He acted under that petition and called the April 20 board meeting, which called and set the May 10, 1956, election. His exact testimony is set out later in this opinion in connection with a particular point raised on this appeal.

The trial court entered its findings to the effect that the May 3, 1956, election and plaintiff's acceptance annexed the Common School District to plaintiff as of the day the votes were counted and certified; that the other proceedings after that date and especially the May 10 election were void, because under the statute (165.300 RSMo 1949, V.A.M.S.) no other election could be held for two years after the first special election; and that defendants and intervenor could not in a declaratory judgment action collaterally attack the validity of that election or of the resultant enlarged school district. The trial court then entered its judgment declaring that the election of Coal Creek District No. 37, Vernon County, Missouri, to annex to Walker Reorganized School District R-4 held in May, 1956, was a legal bona fide election and that thereby it became a part of Walker Reorganized School District R-4; that its property belongs to that (plaintiff) district; that the election called by the Vernon County Board of Education for June 28,

1956, had no force or effect as to Coal Creek District No. 37 and that the former clerk of old Coal Creek District No. 37 is directed to turn over the money and property thereof to Walker Reorganized School District R–4.

Defendants and intervenor after an unavailing motion for new trial bring this appeal.

They first urge that the trial court erred in its conclusion that Intervenor could not assert its claim to Coal Creek Common School District No. 37 by an intervening petition requesting a declaratory judgment for the reasons that (1) where two school districts each claim a given territory, a declaratory judgment action is proper to test which has the superior claim; (2) plaintiff waived the point by instituting a declaratory judgment action asserting its claim to the disputed territory; and (3) plaintiff waived any objection to the form of intervenor's action by answering without raising the objection by answer or by motion filed before answer.

■ It is well established that the legality of the organization of a school district cannot be inquired into by a suit brought directly by an individual, but must be assailed, if at all, by quo warranto in the name of the state through the prosecuting attorney or attorney general. Lane v. Finney, Mo.App., 274 S.W.2d 521, 523; Spiking School District No. 71, Dekalb County v. Purported "Enlarged School District R–II" (en banc), 362 Mo. 848, 245 S.W.2d 13, 21; Utt v. Oster, 362 Mo. 866, 245 S.W.2d 22; State ex rel. Burns v. Johnston, Mo.Sup., 249 S.W.2d 357. As stated in the Spiking case, supra, 245 S.W.2d loc. cit. 21: "In view of the facts alleged, a declaratory judgment action is not available to the individual plaintiffs who are residents, patrons and taxpayers of the reorganized district. Bonderer v. Hall, Mo. Sup., 205 S.W. 542; State ex rel. Consolidated School District No. 2 Clinton County v. Hunt [(en banc) Mo.Sup., 199 S.W. 944]. They are only indirectly affected by the lack of de jure existence of the reorganized district and the attempted action by them is in the nature of a collateral attack."

In Spilker v. Bethel Special School District, Mo.App., 235 S.W.2d 78, 80, it was held, "The same principle should apply to a case such as the one at bar, where the legality of an annexation is attacked on account of some irregularity in the proceeding wherein the school district seeks to acquire additional territory. State ex rel. Childs v. Board of Com'rs of Crow Wing County, 66 Minn. 519, [68 N.W. 767] 69 N.W. 925, [73 N.W. 631] 35 L.R.A. 745. Some courts give as the reason for the above mentioned rule that corporate franchises are grants of sovereignty only, and, if the state acquiesces in their usurpation, individuals will not be heard to complain. Others base the rule upon consideration of public policy, emphasizing the importance of stability and certainty in such matters, and the serious consequences which might follow if the existence of a public corporation could be called in question by persons who do not have an interest in the matter separate and distinct from that of the State itself. But, whatever reason is advanced, the rule is unanimous that where a public body has, under color of authority, assumed to exercise the power of a public corporation of a kind recognized by law, the validity of its organization can only be challenged by the State. The same rule applies where such public corporation extends it authority, under color of law, over additional territory. Its defacto existence in such territory should not be allowed to be questioned by private individuals. State ex rel. Childs v. Board of Com'rs of Crow Wing County, 66 Minn. 519, [68 N.W. 767] 69 N.W. 925, [73 N.W. 631] 35 L.R.A. 745."

■ However, a different question is presented here. Concededly, it is one of first impression in this state. Both plaintiff and intervenor are public school districts. Each in its public corporate ca-

pacity is claiming the same territory, the Coal Creek District. Each claims that this district is legally a part of its corporate territory. Each bases its claim thereto on the assertion that it was the one which took the first valid step to acquire the Coal Creek District. Both plaintiff and intervenor have a direct interest in the matter. There is no threat of harassment by individuals questioning the validity of a school district. To permit plaintiff and intervenor, in a declaratory judgment action, to determine the question of which took the first valid step to acquire the Coal Creek District does not appear to violate any of the reasons for the rule that an individual cannot question the legality of the organization of a school district by a declaratory judgment action, but must proceed, if at all, by quo warranto in the name of the State. Since the reason for that rule fails as applied to this case we do not apply the rule. We hold that a declaratory judgment action is an appropriate remedy for the determination of the question of which of the two school districts took the first valid step to acquire the Coal Creek District. In so holding we note that the Supreme Court has been careful to leave the door open for the decision that the cases in which individuals are endeavoring to attack the validity of an annexation or a reorganization through a proceeding other than by quo warranto in the name of the State are not necessarily controlling where two school districts are claiming the same territory. Spiking School District v. Purported "Enlarged School District R–II," 362 Mo. 848, 245 S.W.2d 13, 21; State ex rel. Burns v. Johnston, Mo.Sup., 249 S.W.2d 357; See also Lowland School District No. 32 of Cooper County v. Wooldridge School District, Mo.App., 216 S.W.2d 545; Mullins v. Eveland, Mo.App., 234 S.W.2d 639; State ex rel. Corder School Dist. No. R–3 v. Oetting, Mo.App., 245 S.W.2d 157.

■ However, as to the original defendants herein; namely, Chester Flint and the Vernon County Board of Education, we agree that their interests are indirect and that they come within the rule prohibiting individuals from challenging the validity of the annexation of territory by a school district in a declaratory judgment action. It is considered to be against public policy to permit them to raise such defenses in a declaratory judgment action. We hold that in spite of their claim of waiver of the question by plaintiff these defendants have no right in this action to challenge the validity of the purported annexation of the Coal Creek School District by plaintiff. However, all issues and contentions which these defendants have raised are before this court through intervenor, whose interest is direct.

We proceed to consider the merits of the contentions raised by intervenor; namely, (1) That the Vernon County Board of Education took the first jurisdictional step to include the Coal Creek District in intervenor's district and thereby pre-empted the jurisdiction over the area; (2) That the annexation election of May 3, 1956, was void in that it had not been ordered by the Board of Directors of Coal Creek District, and (3) That the annexation election of May 10, 1956, was void because it was not called by the Board of Directors of Coal Creek District acting upon a petition requesting such election signed by ten qualified voters of such district.

■ It is well-settled that where two public bodies each claim jurisdiction over the same territory by virtue of consolidation proceedings or by annexation proceedings, the one which takes the first valid step to accomplish the consolidation or annexation has the superior claim regardless of which one completes its proceedings first. State ex rel. Corder School Dist. No. R–3 v. Oetting, Mo.App., 245 S.W.2d 157, 160; State ex inf. Goodman ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W.2d 271; Willard Reorganized School District No. 2 of Greene County v. Springfield Reorganized School District, 241 Mo.App. 934, 248 S.W.2d 435; State ex inf. Taylor

ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762.

Thus, the question which we must decide is which commenced its proceedings and took the first valid step to accomplish the consolidation or annexation—the Vernon County Board of Education in instituting the proceedings which ultimately resulted in the formation of intervenor district allegedly including the Coal Creek District, or the Board of Directors of the Coal Creek School in instituting proceedings which resulted in the claimed annexation of that district to plaintiff.

Plaintiff was acting under Section 165.-300 RSMo 1949, V.A.M.S. This section provides that whenever a common school district which adjoins any of certain other named school districts wishes to be annexed thereto, "upon the reception of a petition setting forth such fact and signed by ten qualified voters of such district, the board of directors thereof shall order a * * * special election for said purpose * * *." Thus, the first step of the annexation proceeding as set out in the statute is "the reception of a petition * * * signed by ten qualified voters of such district * * *." For upon that act taking place the statute makes it mandatory for the board to call an election as provided therein. This is the first valid step to accomplish the annexation of the Coal Creek District relied on by plaintiff. State at Inf. of Taylor ex rel. Oster v. Hill (en banc), Mo., 262 S.W.2d 581, 582; State ex rel. Fry v. Lee, 314 Mo. 486, 284 S.W. 129.

Looking to the record, we find that on April 16, 1956, a Mr. Clevenger and Mr. Smith came to the home of Chester Flint, a member of the Board of Directors of Coal Creek District, and showed Chester's father what was presumably a petition for annexation. Chester did not examine it and did not discuss it with Clevenger or Smith. The petition was never handed to him for filing. On these facts we hold that on April 16, 1956, nothing had occurred that could be said to be the first valid step to accomplish the annexation of Coal Creek District by plaintiff.

With regard to April 17, 1956, the testimony as given by E. Ray Eddy, president of the Board of Directors of the Coal Creek District, was to the effect that on the afternoon of April 17th, "around twelve o'clock", Mr. Brown and Mr. Smith "presented me with a petition wanting me to call a board meeting, and I agreed to if I could get the board members together." In answer to one question asked of him on direct examination he indicated that this petition had not been handed to him for filing. Previously it had been presented to him for signing. Then on cross-examination he testified:

"Q. Mr. Eddy, you say on April 17th these two gentlemen did present a petition to you? A. Yes, sir.

"Q. Asking for the annexation? A. Yes, sir.

"Q. You looked at the petition? A. Yes, sir.

"Q. Did it have more than 10 signers on it? A. Well—

"Q. The facts are there were about 20 signers? A. I hate to make a statement when—

"Q. Just what you know, Ray? A. I'm going to make the statement that I never counted them.

"Q. You did attend this meeting and called and voted for a special election under that petition? A. Yes, sir.

"Q. You are not doing anything illegally if you can help it, are you, Ray? A. That's right.

"Q. You were acting under that petition which was presented to you on April 17th? A. Yes, sir."

The court then proceeded to examine him as follows:

"Q. In your testimony you say here that a petition to call an election was presented to you on April 17th or along about then? A. Yes.

"Q. Then on April 20th the Board met and called an election? A. Yes.

"Q. That election was held on May 10, 1956, on that petition and notices posted? A. Yes.

"Q. That election for annexation carried? A. Yes.

"The Court: That's all."

Plaintiff is basing its claim to the Coal Creek School District on its assertion in its petition that it took the first valid step to acquire that district in that "there was presented to the Board of Coal Creek District No. 37, a petition signed by twenty (20) qualified voters of Coal Creek District No. 37" requesting the annexation. In bringing this suit plaintiff has undertaken the burden of proving that allegation to the extent of ten such signatures as required in the statute in order to legally justify its claim to the Coal Creek District. Such proof is a necessary part of plaintiff's claim that it took the first valid step to acquire Coal Creek as provided by the statute.

■ The rule is that where a statute authorizing the submission to a vote of the people of a specific question of a local character, such as the annexation of adjoint territory by a school district, provides for the calling of a special election upon the presentment of a petition to a designated officer or authority, the presentment of such petition is a condition precedent to the holding of the election; and unless it is signed by the number of qualified electors prescribed by the statute the election will be void. 29 C.J.S. Elections § 69, page 92; 18 Am.Jur., Elections, Sec. 102, page 244; 78 C.J.S. Schools and School Districts § 37d(2), page 703.

■ The evidence before us clearly reveals that the only member of the school board who ever saw the petition for annexation did not count the names thereon. There is no evidence that it contained at least ten signatures; nor that the signatures it contained were of at least ten qualified voters of the district, as required by the statute. We are compelled to conclude that plaintiff has failed to sustain its burden of proof that a petition in conformity with the statutory requirements had been presented to the board. State v. Pemberton, 235 Mo.App. 1128, 151 S.W.2d 111, 117; 18 Am.Jur., Elections, Sec. 102, page 244; 31 C.J.S. Evidence § 146b, page 807; 20 Am.Jur., Evidence, Secs. 175, 181.

■ The record is such that upon Plaintiff failing to sustain this burden of proof intervenor is the one who must be held to have validly acquired the Coal Creek District. Plaintiff has admitted and stipulated facts which in effect concede that in the absence of it having pre-empted jurisdiction of the Coal Creek District by having taken the first valid step to accomplish its annexation on or before April 17, 1956, then the action taken by the Vernon County Board of Education, in approving a reorganization plan which included the Coal Creek School District, pre-empted jurisdiction over that district for intervenor, and that through the subsequent action and election of June 28, 1956, it eventually became a part of intervenor's territory.

Having reached this conclusion it becomes unnecessary for us to consider any of the other numerous contentions raised by the parties.

For the reasons stated herein, we reverse and remand this cause to the trial court with directions that it enter its findings and judgment in accordance with the findings and declarations of this opinion. It is so ordered.

All concur.